UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LUTHER GERALD SIMMONS                         CIVIL ACTION

VERSUS                                                         NO.  07-7201

N. BURL CAIN, WARDEN                             SECTION "R"(4)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2).[1]

I.     **Factual Background**

The petitioner, Luther Gerald Simmons ("Simmons"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On March 9, 2001, Simmons was indicted by a grand jury in St. Helena Parish for the first degree murder of Herman Newell, the former Clerk

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 3.

of Court for St. Helena Parish.[3]  The judges from St. Helena Parish recused themselves from presiding over the case.[4]  An ad hoc judge was appointed and the case was eventually transferred to Tangipahoa Parish.[5]  The indictment later was amended on April 29, 2002, to charge Simmons with second degree murder.[6]

The record reflects that, on February 22, 2001, Herman Newell ("Newell") drove his red 1995 Chevrolet pickup truck into the parking lot of Miller's Grocery Store in the town of Greensburg, Louisiana, in St. Helena Parish.[7]  Lindy Simmons, the estranged wife of Luther Gerald Simmons, was with Newell in the truck when Luther Simmons rammed his white 1996 pickup truck into Newell's vehicle.[8]  Simmons got out of the truck with his 12-gauge Remington shotgun and shot into Newell's truck.  Newell, according to the trial testimony, tried to leave the parking lot by backing up onto Highway 16.  Newell hit a concrete monument when Simmons crossed the highway on foot and again shot into the vehicle killing Newell.

---

[3]St. Rec. Vol. 1 of 6, p. 18, Indictment, 3/9/01.

[4]St. Rec. Vol. 1 of 6, p. 22, Order of Recusal, 3/15/01.

[5]St. Rec. Vol. 1 of 6, p. 20, Order, 3/13/01; p. 7, Minute Entry, 11/6/01.

[6]St. Rec. Vol. 1 of 6, p. 18, Indictment, handwritten amendment dated 4/29/02; p. 8, Minute Entry, 4/29/02.

[7]Because the State failed to provide a complete record, which should have included the complete trial and post-conviction record, the unpublished appellate opinion, and the Louisiana Supreme Court records, the Court has summarized the facts based on the relevant trial testimony.  St. Rec. Vol. 4 of 6, Trial Transcript, p. 809, 5/1/01 through St. Rec. Vol. 5 of 6, Trial Transcript, p. 1201, 5/2/01.

[8]St. Rec. Vol. 4 of 6, Trial Transcript, p. 917, 5/1/01.

Simmons was tried before a jury on April 29 through May 3, 2002, and was found guilty as charged of second degree murder.[9]  The Trial Court sentenced Simmons on June 10, 2002, to serve life in prison without the benefit of parole, probation, or suspension of sentence.[10]

On May 9, 2003, the Louisiana First Circuit Court of Appeals affirmed Simmons's conviction and sentence.[11]  Simmons's conviction became final 30 days later, on June 9, 2003, because he did not seek rehearing or file for timely review in the Louisiana Supreme Court.[12]  *Butler v. Cain,* 533 F.3d 314 (5th Cir. 2008) (citing *Roberts v. Cockrell,* 319 F.3d 690, 694-95 (5th Cir. 2003) (for AEDPA purposes an appeal is final when the state defendant does not timely proceed to the next available step in the state appeal process)).

## II.   <u>Procedural History</u>

On or about May 7, 2004, Simmons filed with the Trial Court an application for post-conviction relief raising seven claims:[13] (1) a fatally flawed indictment was handed down by a biased grand jury; (2) the prosecution was vindictive; (3) the Trial Court denied him his right to an impartial jury; (4) the prosecutions impeachment was improper; (5) the Trial Court gave confusing and misleading jury instructions; (6) his trial counsel provided ineffective assistance; and (7) he was denied his right to a fair cross section of the jury commission and grand jury forepersons.

---

[9]St. Rec. Vol. 1 of 6, p. 72, Jury Verdict, 5/3/02; Trial Minutes, p.8-16, 4/29/02-5/3/02.

[10]St. Rec. Vol 1 of 6, p. 16, Sentencing Minutes, 6/10/02.

[11]*State v. Simmons*, 844 So.2d 422 (La. App. 1st Cir. 2003) (Table).

[12]Pursuant to La. Code Crim. P. art. 922(C) and La. S.Ct. R. X § 5, petitioner had 30 days from the issuance of the state appellate court's opinion to mail or file a timely writ application in the Louisiana Supreme Court, which he did not do.  The thirtieth day was Sunday, June 8, 2003.  The end date falls to the next business day, Monday, June 9, 2003. *See* Fed. R. Civ. P. 6; La. Code Civ. P. art. 5059; La. Rev. Stat. Ann. § 1:55.

[13]*See* Rec. Doc. No. 3-3, p. 10-13, Judgment and Reasons on Application for Post-Conviction Relief, 10/17/06; Rec. Doc. No. 2, p. 3, ¶11(a)(3).

On September 29, 2004 the Trial Court issued an order denying relief as to claim six (6) pursuant to La. Code Crim. P. art. 930.4(A).[14]  The Court also ordered Simmons to provide reasons why his claims one (1) through five (5) were not raised in the trial proceedings or on appeal.  The Court further ordered the State to respond to Simmons's claim number seven (7).

In open court on September 27, 2006, the Trial Court read into the record its written reasons for denying Simmons's post-conviction claims.[15]  First, the Court indicated that Simmons dismissed all of his post-conviction claims except three claims, which were: (1) he was convicted based on a fatally defective indictment handed down by a biased grand jury; (2) his right to an impartial jury was violated when a potential juror was manipulated and improperly excused by the prosecution; and (3) he was denied the right to effective assistance of counsel.  The Court held that the grand jury issue was without merit and was procedurally barred, because it was not raised by pretrial motion to quash pursuant to La. Code Crim. P. arts. 532, 533.  He denied the other jury issue finding no proof that the jury was tampered with and noting that the jury was seated without objection.  Finally, the Court held that Simmons's ineffective assistance of counsel claim was without merit.

Simmons's subsequent writ application filed with the Louisiana First Circuit was denied without stated reasons on December 28, 2006.[16]  Simmons's related writ application filed with the Louisiana Supreme Court was also denied without reasons on September 28, 2007.[17]

---

[14]The Trial Court's reference to issue number six is curious since the Court went on to address ineffective assistance of counsel.  Because the State failed to produce a complete record, the Court is unable to confirm how the issues were numbered in Simmons's state application.

[15]Rec. Doc. No. 3-3, pp. 2- 9, Transcript, 9/27/06; *see also*, Rec. Doc. No. 3-3, pp. 10-13, Judgment and Reasons on Application for Post-Conviction Relief, 10/17/06.

[16]Rec. Doc. No. 3-3, p. 14, 1st Cir. Order, 2006-KW-2224, 12/28/06.

[17]*State v. Simmons*, 964 So.2d 352 (La. 2007); Rec. Doc. No. 3-3, p. 15, La. S. Ct. Order, 2007-KP-0193, 9/28/07.

## III.   **Federal Petition**

On November 29, 2007, the clerk of court filed Simmons's petition for federal habeas corpus relief in which he raised four grounds for relief:[18]  (1) the murder indictment was fatally defective because it was returned by a biased grand jury; (2) he was denied the right to an impartial jury where the prospective jurors were improperly excused by unauthorized parties; (3) there was insufficient evidence presented at trial to support a conviction for second-degree murder; and (4) he was denied his sixth amendment right to effective assistance of trial counsel.  The State filed an answer and memorandum in opposition to Simmons's petition arguing that the petitioner's petition should be denied.[19]

## IV.   **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[20] applies to this petition, which is deemed filed in this court under the federal mailbox rule on October 12, 2007.[21]  The threshold questions in habeas review under the amended

---

[18]Rec. Doc. Nos. 3, 10

[19]Rec. Doc. Nos. 8, 9.

[20]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applies to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[21]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Simmons's federal habeas petition on November 19, 2007, when the filing fee was paid.  Simmons dated his signature on the petition on October 12, 2007.  This is the earliest date on which he could have delivered the packet of papers to prison officials for mailing.  The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted their state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State in this case concedes that Simmons's federal petition was timely filed and that the claims have been exhausted. The State further argues that the grand jury issue is in procedural default and that it and the other claims are otherwise without merit.

## V.   Standards of Review on the Merits

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable

application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See e.g., id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" (brackets in original) *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002); *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230,

246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  *Price*, 538 U.S. at 641 (quoting  *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

## VI.   Analysis

### A.   Biased Grand Jury

Initially, Simmons complains that the original indictment was fatally defective, because the St. Helena Parish grand jury was biased.  Simmons argues that, because Newell was the clerk of the district court in St. Helena Parish, he helped to impanel the grand jurors who thereafter indicted Simmons in connection with Newell's death.  In support of his position, Simmons points out that there was a change of venue from St. Helena Parish to Tangipahoa Parish because of the publicity. Implicit in Simmons position is that the grand jury was not impartial and should have been from another parish.

The issue of pre-indictment publicity has been raised with increasing frequency in recent years.  However, the grand juries and petit juries perform different functions, and the impartiality that is required in the context of the petit jury may not be necessary in the context of the grand jury. The Supreme Court has declined to express its view on the question of whether bias or prejudice on the part of the grand jurors based on pretrial publicity would violate the Fifth or Fourteenth Amendments.  *Beck v. Washington*, 369 U.S. 541, 546 (1962).[22]

---

[22]"It may be that the Due Process Clause of the Fourteenth Amendment requires the State, having once resorted to a grand jury procedure, to furnish an unbiased grand jury. Compare *Lawn v. United States,* 355 U.S. 339, 349-350, 78 S.Ct. 311, 317-318, 2 L.Ed.2d 321 (1958); *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956); *Hoffman v. United States,* 341 U.S. 479, 485, 71 S.Ct. 814, 817, 95 L.Ed. 1118 (1951).  But we find that it is not necessary for us to determine this question; for even if due process would require a State to furnish an unbiased body once it resorted to grand jury procedure-a question upon which we do not remotely intimate any view-we have concluded that Washington, so far as is shown by the record, did so in this case." *Beck,* 369 U.S. at 546.

In the subject case, the trial court  after an evidentiary hearing found, while there was pre-indictment publicity, that fact alone did not necessarily translate into bias or prejudice.  The judge further held that a fair assessment of the testimony presented convinced it that the grand jurors performed their duties fairly and impartially and indicted the defendant based upon the evidence presented.   Further, the Court held that the unfortunate circumstance that the Clerk of Court was also the victim in this case was not shown to have tainted the jury in any way.[23]  *Accord Beck*, at 556 (the Court held that "some adverse publicity" was not enough to taint a petit jury).

In considering this issue, because the United States Supreme Court has not addressed the issue of pre-indictment publicity and its impact, if any, on a grand jury, the Court finds that Simmons cannot meet the *Williams* standard of review.  The Court therefore can not find that the state courts' denial of relief on this issue was contrary to, or an unreasonable application of Supreme Court precedent, since no such precedent exists.  Simmons's request for relief of this issue must be denied.[24]

---

[23]Rec. Doc. 1, Exhibit D.

[24]Even if Simmons could state a basis for federal review, the Court notes that his grand jury issue is procedurally barred.  In the only reasoned opinion on the issue, *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991), the Trial Court found Simmons's grand jury claims to be procedurally barred for failure to file a motion to quash the indictment pursuant to La. Code Crim. P. arts. 532 and 533, which require that such a challenge be raised first in a pretrial motion to quash. Louisiana's contemporaneous objection rules are independent state grounds on which both Louisiana and federal courts have declined to consider challenges to the grand jury.  *See Francis v. Henderson*, 425 U.S. 536, 540-41 (1976) (failure to file a pretrial motion to quash as required by Louisiana law stands as a waiver of the right to challenge the grand jury composition which the federal courts must respect); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Williams v. Cain*, 125 F.3d 269, 276 (5th Cir. 1997) (petitioner failed to file pretrial motion to quash regarding his claim of discrimination in the grand jury foreperson selection process and was procedurally barred under Louisiana law and federal review was also barred).  Although this bar was addressed by the State in its opposition, Simmons has not shown cause for his defaults or any prejudice that would result from not addressing the merits of his claims.  He also has not demonstrated that a fundamental miscarriage of justice would occur if the Court does not reach the merits of his grand jury claim.

**B.**     <u>**Fairness of Petit Jury**</u>

Simmons claims that he was denied a right to an impartial petit jury at trial for the following reasons: (1) one prospective juror was excused from serving on the jury by a District Attorney investigator; and (2) another prospective juror was told by her employer that she did not have to report to jury duty.[25] Simmons does not provide any direct proof that the failure of these prospective jurors to appear for jury selection unfairly impacted the jury that was actually selected to serve in his case.

The State opposed this claim noting that the prospective jurors Tom Tolar and Glenda Sharkey chose on their own not to appear for jury selection. The State further contends that nothing in Louisiana law equates the decision not to appear for jury selection by a prospective juror to the denial of the petitioner's right to a fair trial.

The Supreme Court has held that the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial and indifferent jurors. *Morgan v. Illinois*, 504 U.S. 719, 727 (1992) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)); *Turner v. Louisiana*, 379 U.S. 466, 471 (1965) (once the State accords a defendant the Sixth Amendment right to a jury trial in a criminal case, the Fourteenth Amendment commands the jury must stand impartial and indifferent.) The requirement that the initial jury pool or venire be "the fair-cross-section . . . is derived from the traditional understanding of how an 'impartial jury' is assembled. That traditional understanding includes a representative venire, so that the jury will be, as we have said, 'drawn from a fair cross section of the community.'" *Holland v. Illinios*, 493 U.S. 474, 480 (1990) (citing *Taylor v. Louisiana*, 419 U.S. 522, 527 (1975)). "The Sixth Amendment requirement of a fair cross section

---

[25] Rec. Doc. 9, p. 4.

on the venire is a means of assuring, not a *representative* jury (which the Constitution does not demand), but an *impartial* one (which it does)." (emphasis in original) *Holland*, 493 U.S. at 480. Thus, the Court requires that "the burden of showing essential unfairness of a jury be sustained by him who claims such injustice, and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality." *United States ex rel. Darcy v. Handy*, 351 U.S. 454, 462 (1956).

In this case, Simmons has made no such showing.  He points to two people whose names were called for jury duty and who, for different reasons, failed to appear.  After the post-conviction evidentiary hearing on the matter, the Trial Court found that one of the persons that Simmons complained about was deceased, and because Simmons had no proof regarding his assertion that a member of the prosecutor's office told him that he did not have to appear, the claim failed.  As to the second person, the Trial Court considered the affidavit of Scott Fairburn.  He is alleged to be the prospective juror who did not appear because "his employer" told him not to go.  The affidavit indicated that Fairburn did not appear because of work.  The Trial Court noted that the situation clearly could have been remedied by issuance of a writ of attachment, which was not done.

Additionally, the Trial Court also considered the testimony of Patrick Henry, who did not remember whether he received a notice to appear for jury duty, and of Glenda Sharkey, who also failed to appear upon advice of her employer.  The Trial Court found that the record did not support a finding that the jury that actually selected and impaneled in open court following a full and complete *voir dire* was unfair.

Similarly, Simmons has not presented any evidence to this Court that the failure to appear by the identified prospective jurors impacted or prejudiced the impaneling of a fair and impartial

jury.  Simmons does not suggest nor has he established that the jury that presided over his case was other than fair and impartial, which is what the Constitution requires.  The Court further finds that the state courts' denial of relief on this issue is neither contrary to nor an unreasonable application of Supreme Court law.

### C.      Sufficiency of the Evidence

Simmons next complains that the evidence presented which  resulted in his conviction is insufficient to support a conviction for second-degree murder.  He contends that the State's case primarily consisted of eyewitness accounts of the shooting incident which was insufficient to establish beyond a reasonable doubt that he had the requisite intent to kill Newell.[26]

The State, in contrast, contends that Simmons fails to present any evidence to support his position on this claim.  Consequently, the State contends that this claim for relief should also be denied.

According to the pleadings, this issue was raised by Simmons on direct appeal.  The State failed to provide the Court with a copy of the unpublished opinion of the Louisiana First Circuit which would provide the analysis and reasons for the denial of this claims.  Nevertheless, the appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson v. Virginia*, which was relied upon by the state appellate court.  The *Jackson* standard requires the Court to determine whether, after viewing the entire record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319; *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992); *Guzman v. Lensing*, 934 F.2d 80, 82 (5th Cir. 1991).

---

[26]*See* Rec. Doc. No. 10, p.10.

Claims of insufficient evidence present a mixed question of law and fact. *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995). The Court must therefore give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of *Jackson*. *Gilley*, 968 F.2d at 467 (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).

The offense of second degree murder, relevant to this case, is defined by Louisiana law as "the killing of a human being . . . [w]hen the offender has a specific intent to kill or to inflict great bodily harm." La. Rev. Stat. Ann. § 14:30.1. The phrase "specific intent" is defined as the state of mind in which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act." La. Rev. Stat. Ann. § 14:10(1). Under Louisiana law, intent need not be proven directly, but may be inferred from the actions of the defendant and the circumstances surrounding those actions. *State v. Sharlhorne*, 554 So.2d 1317, 1321 (La. App. 1st Cir. 1989); *Tate*, 851 So.2d at 930 (citing *Brooks*, 505 So.2d at 717). To establish specific intent, the State must show that the defendant either pulled the trigger, that he acted in concert with his co-perpetrator, or that he actively acquiesced in the use of deadly force. *Tate*, 851 So.2d at 930.

The Court, in reviewing the evidence notes that Joseph Dier, a state police officer with the Louisiana Department of Public Safety, testified that a the time of the incident he was at the Crossroads Restaurant eating dinner with his wife and others.[27] He testified that he heard three shotgun blasts, ran to his car and saw that Simmons had fired a round into the vehicle that was backing out.[28] Dier testified that he began yelling at Simmons to stop shooting and Simmons shot

---

[27]St. Rec. Vol 4 of 6, Trial Transcript, p. 812.

[28]St. Rec. Vol. 4 of 6, Trial Transcript, p. 813.

into the vehicle again.[29]  Dier testified that he observed Simmons reloading the shotgun, then he ran around to the driver's side and shot into the driver-side window, from approximately six feet away.[30]

Dier further testified that while he was waiting for the traffic to clear so that he could get to the gas station across the street, where Newell's truck came to rest, Simmons made the final shot into the back of Newell's neck or head area, from an extremely close range.[31]  Simmons opened the door of the truck and Newell fell out onto his head with his feet still on the floorboard.[32]  Dier testified that Simmons was in a zombie state, and when questioned, he answered that he did not know why he shot his gun.[33]

Kenneth Miller, an officer with the Tickfaw Police Department, was also at the Crossroads Restaurant at the time of the incident.[34]  He testified that he ran out of the restaurant and observed a man with a cowboy hat on foot following a truck, and every so often he shot into the truck.[35]  He observed the truck try to leave but it got stuck, and the man shot into the truck again.[36]  He, along with Dier, started yelling for the man to drop his weapon.  Miller then went to his vehicle to get his

---

[29]St. Rec. Vol. 4 of 6, Trial Transcript, p. 815.

[30]St. Rec. Vol. 4 of 6, Trial Transcript, p. 816.

[31]St. Rec. Vol. 4 of 6, Trial Transcript, p. 817.

[32]St. Rec. Vol. 4 of 6, Trial Transcript, p. 817.

[33]St. Rec. Vol. 4 of 6, Trial Transcript, p. 822.

[34]St. Rec. Vol. 4 of 6, Trial Transcript, p. 838.

[35]St. Rec. Vol. 4 of 6, Trial Transcript, p. 839.

[36]St. Rec. Vol. 4 of 6, Trial Transcript, p. 840.

weapon, and he went across the road where the truck came to rest.[37]  He testified that he was shocked that it was Simmons who was the shooter.[38]

In addition to other eyewitnesses, Lindy Simmons, the wife of Luther Gerald Simmons, also testified during the proceeding.  Mrs. Simmons, a registered nurse with North Oaks Medical Center, testified that Herman Newell was a friend of hers and earlier that day they had been in Springfield, Louisiana.[39]  She testified that when they arrived at the grocery store, she kissed Newell good-bye and reached for her purse in the backseat, when suddenly her husband drove his truck into the back of Newell's truck.[40]  She testified that her husband got out of his truck and was in a trans-like state standing there pointing a gun at the drivers window.[41]  She testified that she suggested to Newell that they leave, and as he was attempting to do so, Simmons fired at least two gunshots, and some of the spray hit her in her arm, hand, and wrist.[42]

She also testified that Simmons took pain medication as a result of a chronic pain problem he had.  She further testified that he was not himself when he would take these medications.[43]  She testified that he became very depressed and began spending a lot of time at his father's home.  She believed he was taking more medications, and he further expressed an intention to kill himself.[44]

---

[37]St. Rec. Vol. 4 of 6, Trial Transcript, p. 841.

[38]St. Rec. Vol. 4 of 6, Trial Transcript, p. 846.

[39]St. Rec. Vol 4 of 6, Trial Transcript, p. 916.

[40]St. Rec. Vol. 4 of 6, Trial Transcript, pp. 916-17.

[41]St. Rec. Vol 4 of 6, Trial Transcript, p. 918.

[42]St. Rec. Vol. 4 of 6, Trial Transcript, p. 920.

[43]St. Rec. Vol. 4 of 6, Trial Transcript, p. 924.

[44]St. Rec. Vol 4 of 6, Trial Transcript, p. 925.

The medications contributed to their marital problems, and Mrs. Simmons ultimately decided to get a divorce.[45]  She testified that on the date of the incident, she had kissed Newell goodbye in the parking lot of Miller's Grocery and seconds later she saw her husband in the window, and he had a flat and expressionless look.[46]

Based on the foregoing review, the record is replete with testimony and evidence that serves to support the jury's decision.  Simmons has failed to demonstrate a basis to challenge the jury's resolve.

The testimony at trial demonstrated that Simmons drove his truck into the truck in which Newell and Mrs. Simmons were sitting.  The evidence establishes that he exited his truck and, with a fully loaded shotgun, shot into the driver's side of the vehicle at least three times.  Simmons ignored the calls from Officers Dier and Miller to stop the shooting and put down his gun.  Instead, Simmons then followed Newell's truck across the road and, before Dier and Miller could cross the roadway, he again shot into the driver's side at close range.  At least one shot was made to the back of Newell's head or neck, later determined to be the cause of death.  The jury also heard evidence that Simmons then opened the driver's door, and Newell fell out onto his head while his feet remained in the car.

Considered in the light most favorable to the prosecution, the record contains more than enough direct and circumstantial evidence to demonstrate that Simmons had specific intent to kill Newell as he repeatedly shot at Newell through the driver's side of the truck and then pursued the truck on foot until it came to a stop, where he shot again.  The evidence supports the jury's verdict

---

[45]St. Rec. Vol. 4 of 6, Trial Transcript, p. 930.  Mrs. Simmons did not file for divorce until after the incident.

[46]St. Rec. Vol. 4 of 6, Trial Transcript, p. 936.

of second degree murder. The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of, Supreme Court law.

### D.   Ineffective Assistance of Counsel

Simmons also contends that his trial counsel provided ineffective assistance. He argues that the facts of the case demonstrated that his was a classic case of manslaughter, because it was committed in "sudden passion" and/or "heat of blood." He complains that his counsel chose an implausible intoxication defense rather than the more appropriate enraged state of mind defense. He claims that the evidence established that he was enraged when he shot and killed Newell after he observed him kissing his wife and that he was acting in a state of sudden passion and/or heat of blood at the time.[47]

The State opposes Simmons's claim and indicates that he failed to present any evidence in support of his claim. As a result, the State argues that this claim should be denied.

The Trial Court considered this claim on review of the post-conviction application. In finding that this claim had no merit, the Court noted that Simmons was represented by two reputable and experienced attorneys whose performances, while unsuccessful, did not constitute ineffective representation under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). The Trial Court quoted the Louisiana First Circuit's decision from direct appeal noting that there was "plenty of time for cool reflection."[48] The appellate court, as quoted by the Trial Court, was convinced that a rational trier of fact, viewing all the evidence as favorable to the prosecution, could have concluded that the state proved its case beyond a reasonable doubt that Simmons was guilty of

---

[47]Rec. Doc. 3.

[48]Rec. Doc. No. 3-3, pp. 8, 13.

second degree murder and that the mitigating factors necessary for manslaughter were not established by a preponderance of the evidence.[49]  Consequently, the Trial Court also found that the defendant failed to prove this, or any of his post conviction claims.[50]

The issue of ineffective assistance of counsel is a mixed question of law and fact.  *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994).  Thus, the question before this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The standard for judging the performance of counsel was established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. at 668, relied upon by the Trial Court.  In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  To meet the burden of proving ineffective assistance of counsel, the petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan*, 980 F.2d at 296; *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002).  "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).  The analysis of counsel's

---

[49]Rec. Doc. No. 3-3, pp. 8, 13.

[50]*Id.*

18

performance must take into account the reasonableness of counsel's actions in light of all of the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Furthermore, "[t]o meet the prejudice prong, the [petitioner] must affirmatively prove, and not merely allege, prejudice." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Theriot v. Whitley*, 18 F.3d 311, 314-15 (5th Cir. 1994). In this context, a reasonable probability of prejudice is "a probability sufficient to undermine confidence in the outcome." *Id.* In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' But it is not enough, under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" *Motley*, 18 F.3d at 1226 (quoting *Strickland*, 466 U.S. at 693). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.

*Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000).

 In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Kimler*, 167 F.3d at 893.  On habeas review, scrutiny of counsel's performance "must be highly deferential" and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance."  *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689-90); *Mattheson*, 751 F.2d at 1441.

 The testimony at the trial clearly presented evidence suggesting that at the time of the shooting, Simmons was stoic and was in a trans-like state.  Simmons now seeks by this claim a second opportunity for this Court to review and re-evaluate the evidence heard by the jury regarding whether he was acting out of passion or with intent to kill Newell.  The jury's understanding of the evidence, or their decision to believe or disregard certain evidence, was well within their powers.

 The jury's assessment of the evidence cannot be challenged on habeas review simply by couching them as ineffective assistance of counsel claims.  Nor can counsel's strategic approach be second guessed only because a guilty verdict was reached.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  *Strickland*, 466 U.S. at 689 (citations omitted).  Simmons has not demonstrated how his counsel's strategy was deficient or was without purpose towards his defense.

 A review of the record reflects that Simmons's trial counsel were thorough in their cross-examination of each of the witnesses, including their efforts to establish points such as Simmons's

zombie-like appearance as he shot, and his inability to express why he shot his gun at all.  Counsel followed lines of questioning tending to bring-out for the jury evidence which could have supported a manslaughter defense; the jury apparently did not find the defense viable in light of the overwhelming evidence of Simmons intent to kill.

Simmons has not demonstrated that the state courts' denial of relief on this claim was contrary to or an unreasonable application of *Strickland*.  He is not entitled to relief on this claim.

## VII.   Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Luther Gerald Simmons's petition for issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Automo. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[51]

New Orleans, Louisiana, this 2nd day of December, 2010.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[51]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

21